UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NEW ORLEANS DELI & DINING, LLC | CIVIL ACTION

VERSUS | NO: 10-4642

CONTINENTAL CASUALTY COMPANY | SECTION: "S" (3)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Continental Casualty Company's Motion for Summary Judgment (Doc. #11) is **GRANTED**, and plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that New Orleans Deli & Dining, LLC's Motion for Summary Judgment (Doc. #24) is **DENIED**.

## BACKGROUND

Plaintiff, New Orleans Deli & Dining, LLC ("NODD"), filed this action against its commercial general liability insurer, defendant Continental Casualty Company ("CCC"), seeking a defense and indemnity with respect to a civil action pending against NODD in the United States District Court for the Eastern District of Louisiana, Mary McCollum, et al. v. McAlister's Corporation of Mississippi, Civil Action No. 08-5050. The McCollum plaintiffs allege that they are

current or former employees of NODD, and that they were denied tips by NODD.[1] They allege that NODD's customers left cash tips in a "tip jar" located at the register or entered a tip amount on the merchant's copy of their credit card slips. The McCollum plaintiffs allege that they had an agreement and understanding with NODD that they would receive the tips, and that NODD did not distribute to the employees the tips charged to customers' credit cards, and that the managers kept portions of tips left in the "tip jar." They alleged that NODD is liable to them for is failure to distribute the tips under theories of breach of contract, negligence, fraud, unjust enrichment, and conversion. Specifically, the McCollum plaintiffs allege, in pertinent part, that:

> 10. By law, by intention of the customers, and by the agreement between the defendants and the workers, the tips given by customers at McAlister's restaurants were the property and wages of the workers, including Plaintiffs, who were working at the deli that assisted customers at the buffet and the cash register.
>
> \*   \*   \*
>
> 17. Defendants and any other person who participated in these actions regarding tips and the taking of these tips are jointly and severally liable to the Plaintiffs for their negligence and/or other fault in the following respects:
>
>> A. Failing to fulfill the agreement with the workers, including Plaintiffs, that tips provided by customers were part of the workers' wages.
>>
>> B. Failing to distribute tips from customers paying by credit card which were specifically designated and allotted to be a tip for the workers at McAlister's restaurants and delis.

---

[1] NODD is a franchisee of McAlister's Corporation of Mississippi. The McCollum plaintiffs named McAlister's in their original complaint, and added claims against NODD in their first amended complaint.

    C.    Failing to distribute tips from customers who placed money into tip jars at McAlister's restaurant and delis that were intended to be a tip for those working at McAlister's restaurant and delis.

    D.    Keeping customers' tips intended for the persons working at McAlister's restaurants and delis.

    E.    Using tips from customers intended for the persons working at McAlister's restaurants and delis for the benefit of the Defendants, both individually and as group.

18. Defendants are liable to Plaintiffs under Louisiana Civil Code article 2315 for their delictual actions and liable for their negligent actions that were the direct and proximate cause of the damages and injuries sustained by the Plaintiffs and others working at these restaurants and delis.

19. Additionally, or in the alternative, defendants are liable to Plaintiffs for breaching their obligations and contracts with the Plaintiffs and workers which in Louisiana is defined under Louisiana Civil Code articles 1906, 1994, 1995, 1996, 1997, and 1998. Defendants had a conventional obligation and/or contract with Plaintiffs and all those working at McAlister's restaurants and delis to distribute all tips left by customers for the workers as these tips were the property, money, and wages of the employees working at the restaurant or deli. This property, money, and wages which rightfully belonged to the workers were withheld, taken, used by the Defendants, or distributed to charities on behalf of the Defendants. Defendants and their managers purposely, intentionally, and maliciously failed to perform their obligations, and they intended for this failure to perform to aggrieve the Plaintiffs.

20. Additionally, or in the alternative, Defendants are liable to Plaintiffs for misrepresentations and the suppression of truth, which in Louisiana are defined in Louisiana Civil Code articles 1953 and 1958. Defendants misrepresented and suppressed the truth regarding tips and wages with the intention to obtain an unjust advantage in favor of Defendants and to cause a loss to the Plaintiffs and the other

>workers. Plaintiffs and other workers detrimentally relied on defendants' fraud causing and contributing to their damages.
>
>21. Additionally, or in the alternative, Defendants are liable to Plaintiffs under the doctrine of unjust enrichment, which in Louisiana is defined in Louisiana Civil Code article 2298. Defendants have been enriched without cause at the expense of the Plaintiffs and other workers, because the tips from customers were the property, money, or wages of the Plaintiffs and workers. But Defendants enriched themselves without cause when they withheld, took, used, or distributed these tips.
>
>22. Additionally, or in the alternative, Defendants are liable for receiving, withholding, taking and using the tips owned by the workers that were not owned by the Defendants, which in Louisiana is defined under Louisiana Civil Code article 2299.
>
>23. Additionally, or in the alternative, Defendants are liable for the conversion of the tips owned by the Plaintiffs and other workers.
>
>24. Additionally, or in the alternative, Defendants are liable to the workers at McAlister's restaurants and delis under state and common law principles, including breach of contract, conversion, theft, and/or unjust enrichment.

NODD contends that CCC has a duty to provide it with a defense for the McCollum litigation because the CCC general commercial liability insurance policy does not unambiguously exclude coverage for the alleged claims. CCC argues that it does not owe NODD a defense because the policy does not cover the McCollum plaintiffs' claims. NODD and CCC have filed cross motions for summary judgment regarding CCC's duty to defend NODD in the McCollum litigation.

## ANALYSIS

**1.     Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**2.     Duty to Defend**

Under Louisiana law, an insurer's duty to provide a defense for suits brought against its insured "is broader than its liability for damage claims." American Home Assur. Co. v. Czarniecki, 230 So.2d 253, 259 (La. 1970).  An insurer's duty to defend is determined "solely by comparing the allegations in the complaint against the insured with the terms of the policy at issue." Lamar Advertising Co. v. Cont'l Cas. Co., 396 F.3d 654, 660 (5th Cir. 2005) (quoting Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc., 954 F.2d 1075, 1077 (5th Cir. 1992)) (internal quotation

marks omitted). "If there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured." Id. (quoting Complaint of Stone Petroleum Corp., 961 F.2d 90, 91 (5th Cir. 1992)) (internal quotation marks omitted). Thus, liberally interpreting the complaint, and "[a]ssuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, if there would be both (1) coverage under the policy and (2) liability to the plaintiff." Id. (quoting Hardy v. Hartford Ins. Co., 236 F.3d 287, 291 (5th Cir. 2001) (citing Complaint of Stone Petroleum Corp., 961 F.2d at 91).

The general commercial liability insurance policy issued to NODD by CCC provides, in pertinent part, the following in Coverage A:

1. Insuring Agreement

    a. We (CCC) will pay those sums that the insured (NODD) becomes legally obligated to pay as damages because of "bodily injury"[2] or "property damage"[3] to which this insurance applies. We have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not

---

[2] Plaintiffs and CCC agree that the "bodily injury" provisions of Coverage A are not implicated. They also agree that Coverage B for "personal and advertising injury liability" is not applicable.

[3] "Property damage" is defined as:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

>   apply. We may, at our discretion, investigate any "occurrence"[4] and settle any claim or "suit" that may result."
>
>   \*   \*   \*
>
>   b. This insurance applies to "bodily injury" and "property damage" only if:
>
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".

The policy excludes coverage for "property damage" that is "expected or intended from the standpoint of the insured." The policy also excludes from coverage "property damage" "for which the insured is obligated to pay damages by reason of the assumption of the liability in a contract or agreement."

CCC argues that it does not owe NODD a defense because the McCollum plaintiffs are claiming an economic loss, which is not tangible property. CCC argues also that the McCollum plaintiffs allege intentional acts and breach of contract by NODD, which are excluded from coverage. Further, CCC argues that the McCollum plaintiffs' claims are not covered under the policy because they do not fit the definition of covered "property damage."

NODD argues that the McCollum plaintiffs' claims are covered under subsection (b) of the policy's definition of "property damage," which provides coverage for loss of use of tangible property that is not physically injured. NODD argues that the McCollum plaintiffs allege that they lost the use of cash, which is a corporeal movable, and thus, tangible property. See Innovative Hospitality Sys., LLC v. Abraham, 61 So.3d 740, 744 (La. Ct. App. 2011). NODD argues that the

---

[4] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

7

McCollum plaintiffs' claims are not excluded under the policy's exclusions regarding contracts because the McCollum plaintiffs also allege that NODD owed them the tips by law.  Also, NODD argues that the exclusion for "property damage" that is expected or intended by the insured does not relieve CCC of its obligation to provide it with a defense because the McCollum plaintiffs also allege that NODD was negligent.

Reading the policy together with the McCollum plaintiffs' complaint reveals that there is no coverage under the CCC general commercial liability insurance policy for the McCollum plaintiffs' claims against NODD.  The McCollum plaintiffs allege that they lost the use of tangible property, i.e. money, that was not physically damaged.  However, they have not alleged that the loss of use was caused by an "occurrence" as it is defined in the policy.  The policy defines an "occurrence" as  "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Black's Law Dictionary, p. 16 (9th ed. 2009), defines an accident as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that count not be reasonably anticipated."  All of the allegations in the McCollum plaintiffs' complaint allege intentional acts on the part of NODD.  The McCollum plaintiffs allege that NODD implemented a tip policy whereby the tips were purposefully taken by the managers or other employees of the restaurants and either kept or donated to charity.  The alleged acts of implementing the tip policy and taking the tips were done intentionally, not accidentally nor negligently.  Thus, plaintiffs' claims do not sound in negligence, but rather the intentional tort, and intentional acts are excluded by the policy.  Therefore, CCC does not owe NODD a duty to defend it in the McCollum litigation.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Continental Casualty Company's Motion for Summary Judgment (Doc. #11) is **GRANTED**, and plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that New Orleans Deli & Dining, LLC's Motion for Summary Judgment (Doc. #24) is **DENIED**.

New Orleans, Louisiana, this 28th day of September, 2011.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**